UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

NORTH AMERICAN COMPANY FOR LIFE
AND HEALTH INSURANCE,

                Plaintiff,

vs.                                         Case No.  3:11-cv-1234-J-34MCR

AMY LAURA DYE, ET AL.,

                Defendants.
_____/

**REPORT AND RECOMMENDATION[1]**

**THIS CAUSE** is before the Court on Plaintiff's Motion for Summary Judgment (Doc. 23) filed July 13, 2012.  On July 26, 2012, Defendant Amy Laura Dye filed a response in opposition to Plaintiff's Motion (Doc. 24).  Defendants Victoria Paige Hoshall-Hakamian and Clark V. Hoshall have not filed a response and the time for doing so has passed.  Accordingly, this matter is now ripe for judicial review.

**I.    INTRODUCTION**

This case concerns a dispute regarding who should receive life insurance proceeds due under a North American Company for Life and Health Insurance policy. Defendants have made conflicting claims to the proceeds leaving North American Company for Life and Health Insurance unable to discharge its admitted liability under

---

[1] Any party may file and serve specific, written objections hereto within FOURTEEN (14) DAYS after service of this Report and Recommendation.  Failure to do so shall bar the party from a de novo determination by a district judge of an issue covered herein and from attacking factual findings on appeal.  See 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(a), 6(a) and (e); Local Rules 6.02(a) and 4.20, United States District Court for the Middle District of Florida.

the life insurance policy.  North American Company for Life and Health Insurance therefore brought the instant interpleader litigation.  See (Doc. 1).

## II.     BACKGROUND

On June 8, 1972, North American Company for Life and Health Insurance ("Plaintiff") issued its Policy Certificate No. L00E146320 insuring Clark V. Hoshall, Jr. ("Insured") under its Group Life Insurance Policy G-060138-9 issued to the American Association of Orthodontists.  (Doc. 23-1A).  On June 7, 2010, Plaintiff received a Beneficiary and Owner Change Request form from the Insured in which he named Defendant Amy Laura Dye as the sole primary beneficiary of the Policy Certificate. (Doc. 23-1B).  On July 27, 2011, the Insured died.  (Doc. 1, ¶ 10).

On August 5, 2011, Plaintiff received a Beneficiary and Owner Change Request form bearing the date July 27, 2011 and purportedly signed by the Insured designating Defendant Victoria Paige Hoshall-Hakamian as 50% beneficiary and Defendant Clark V. Hoshall as 50% beneficiary to the life insurance policy.[2]  (Doc. 23-1C).  On August 24, 2011, Defendant Dye submitted a Proof of Death Claimant's Statement in which she claimed the Policy Certificate's death benefit.  (Doc. 1, ¶ 16).  On October 19, 2011, Defendant Hakamian advised Plaintiff in a letter that the July 27, 2011 Beneficiary and Owner Change Request form should be acknowledged. (Doc. 1, ¶ 18).  The instant interpleader action ensued.

---

[2]     In the July 27, 2011 Beneficiary and Owner Change Request form, the Insured also sought to change the owner from himself to the Clark Vernon Hoshall, Jr. Revocable Trust.  (Id.). Plaintiff did not record the July 27, 2011 Beneficiary and Owner Change Request because the ownership change information was incorrectly provided in the section for "Name Change" not "Owner Change."  (Doc. 23-1, ¶ 7).

**III.    ANALYSIS**

It is well-settled that district courts have broad and significant powers in an interpleader action. Wachovia Bank, N.A. v. Tien, 534 F. Supp. 2d 1267, 1285 (S.D. Fla. 2007). Interpleader is designed to protect neutral stakeholders from harassment in the face of multiple claims against the same fund, and to relieve the stakeholder from assessing which claim, among many, has merit. Podhurst Orseck, P.A. v. Servicios Legales De Mesoamerica S. De R.L., 699 F. Supp. 2d 1344, 1349 (S.D. Fla. 2010) (citations omitted). The purpose of an interpleader action is to "allow the competing claimants to have their rights determined in a court of equity so as to protect the plaintiff from double liability, and to preserve the rights of any claimant to the fund ..." Id. Further, the Supreme Court has stated that the federal interpleader statute "is remedial and to be liberally construed." State Farm Fire & Casualty Co. v. Tashire, 386 U.S. 523, 533 (U.S. 1967).

An interpleader action typically involves two stages. In the first stage, the district court decides whether the requirements for a rule or statutory interpleader action have been met by determining if there is a single fund at issue and whether there are adverse claimants to that fund. Star Insurance Co. v. Cedar Valley Express, LLC, 273 F. Supp. 2d 38, 41 (D.D.C. 2002). District courts addressing the first phase of an interpleader action may also determine if the stakeholder is disinterested -- i.e., makes no claim to the *res* -- and, if so, discharge it from liability and dismiss it from the action. This practice is particularly common in cases involving competing claims to life insurance proceeds where the interpleading insurers -- as disinterested stakeholders -- deposit the

*res* into the court's registry and request immediate dismissal from the action. See e.g., John Alden Life Ins. Co. v. Vanlandingham, 2006 U.S. Dist. LEXIS 34574, 2006 WL 1529047 at *5 (M.D. Fla. May 30, 2006) (granting plaintiff's motion for interpleader and fees and noting that plaintiff, as a disinterested stakeholder, was entitled to early dismissal from case with prejudice); Dunn v. Harris Corp., 560 F. Supp. 2d 1260, 1262 (M.D. Fla. 2008) (noting that disinterested stakeholder's motion for interpleader was granted and that stakeholder was entitled to be dismissed from case); United States v. Sentinel Fire Ins. Co., 178 F.2d 217, 224 (5th Cir. 1950) (noting that "plaintiffs in [an] interpleader suit [can be] dismissed before final decree").[3]

Consistent with these basic interpleader principles, Plaintiff filed its Complaint in response to the defendants' conflicting and competing claims to the life insurance proceeds due under the Policy Certificate and Group Policy.[4] (Doc. 1). It is undisputed that there is a single fund at issue and that there are adverse claims to the fund. Plaintiff makes no claim to the *res* and deposited it into the court registry. Thus, Plaintiff is entitled to interpleader relief and should be dismissed from this action with prejudice. See Orseck, P.A., 699 F. Supp. 2d at 1349 ("This practice [of discharging the stakeholder] is particularly common in cases involving competing claims to life insurance proceeds where the interpleading insurers - as disinterested stakeholders -

---

[3] The second stage of an interpleader action consists of a "determination of the respective rights of the claimants" to the property or funds at issue. Wachovia, 534 F. Supp. 2d at 1285.

[4] On June 21, 2012, Plaintiff sent $104,174.19 to the Clerk of this Court for deposit pursuant to this Court's June 18 Order. (Doc. 19). This sum included the death benefit due under the Policy Certificate and all applicable accrued interest.

deposit the res into the court's registry and request immediate dismissal from the action"); Kurland v. United States, 919 F. Supp. 419, 421 (M.D. Fla. 1996) ("The law normally regards the plaintiff in an interpleader action as having been discharged of full responsibility regarding the interpleaded funds when the funds have been paid into the registry of the court and the parties have had notice and opportunity to be heard.").

Plaintiff further asserts entitlement to an award of attorney's fees and costs. However, attorney's fees and costs should not be awarded to a stakeholder when the stakeholder's interpleader claim arises out of the normal course of business for the stakeholder.[5] In re Mandalay Shores Cooperative Housing Association, Inc., 21 F.3d 380, 383 (11th Cir. 1994). Insurance companies are not innocent stakeholders who unwittingly come into possession of the asset in dispute in the litigation. Id. at 382. Instead, when multiple claimants are disputing the ownership of insurance policy proceeds, the chief beneficiary of the interpleader action is the insurance company. Campbell v. North American Co., 2007 U.S. Dist. LEXIS 54886 at *17 (M.D. Fla. July 30, 2007).

Here, the present dispute arose over the proceeds of a life insurance policy which was issued and paid by Plaintiff. See Hauger v. John Hancock Life Insurance

---

[5] The principle behind the normal-course-of-business standard is simple: an insurance company, for example, avails itself of interpleader to resolve disputed claims to insurance proceeds - disputes that arise with some modicum of regularity. In a sense, the insurance company will use interpleader as a tool to allocate proceeds and avoid further liability. As the costs of these occasional interpleader actions are foreseeable, the insurance company easily may allocate the costs of these suits to its customers. Unlike innocent stakeholders who unwittingly come into possession of a disputed asset, an insurance company can plan for interpleader as a regular cost of business and, therefore, is undeserving of a fee award. In re Mandalay Shores Cooperative Housing Association, Inc., 21 F.3d at 383.

...
...

Co., 2008 U.S. Dist. LEXIS 8413, at *11 (M.D. Fla. Feb. 5, 2008). One inevitable and normal risk of the insurance business is the possibility of conflicting claims to the proceeds of a life insurance policy. Id. Thus, the normal course of business exception applies and attorney's fees and costs are not warranted.

Accordingly, after due consideration, it is respectfully

**RECOMMENDED:**

Plaintiff's Motion for Summary Judgment (Doc. 23) be **GRANTED in part and DENIED in part** as provided in the body of this Report and Recommendation.

**DONE AND ENTERED** in Chambers in Jacksonville, Florida this  24th  day of August, 2012.

_____
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record